# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

RAY SCOTT HEID,　　　　　　　　　　　Case No. 1:16-cv-398
　　　　Petitioner,

　　　　　　　　　　　　　　　　　　　Black, J.
　　vs.　　　　　　　　　　　　　　　　Bowman, M.J.

WARDEN, ROSS　　　　　　　　　　　**REPORT AND**
CORRECTIONAL INSTITUTION,　　　　　**RECOMMENDATION**
　　　　Respondent.


　　　　Petitioner, an inmate in state custody at the Ross Correctional Institution in Chillicothe,

Ohio, has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc.

1). In the petition, petitioner challenges his conviction and sentence in Scioto County, Ohio, Court

of Common Pleas Case No. 08-CR-467. (*Id.*). This matter is before the Court on respondent's

motion to dismiss (Doc. 9), which petitioner opposes. (*See* Doc. 13).[1]

## I. PROCEDURAL HISTORY

### A. State Court Proceedings

### 1. Trial Proceedings: May-June 3, 2008

　　　　On May 5, 2008, the Scioto County grand jury returned a five-count indictment in Case No.

08-CR-467, charging petitioner with aggravated murder in violation of Ohio Rev. Code §

2903.01(A) (Count 1); aggravated burglary in violation of Ohio Rev. Code § 2911.11(A)(1) (Count

2); aggravated robbery in violation of Ohio Rev. Code § 2911.01(A)(1) (Count 3); tampering with

---

[1] Respondent has also separately filed 58 exhibits obtained from the underlying state-court record, as well as the trial transcript, as support for the motion to dismiss. (*See* Doc. 8). In addition, petitioner has filed a motion for discovery and for appointment of counsel. (*See* Doc. 14). In a separate order issued this date, petitioner's non-dispositive motion has been denied as moot.

evidence in violation of Ohio Rev. Code § 2921.12(A)(1) (Count 4); and theft of a motor vehicle in violation of Ohio Rev. Code § 2913.02(A)(1) (Count 5). (Doc. 8, Ex. 1). A firearm specification was attached to the charges set forth in Counts 1 through 3. (*Id.*).

On May 30, 2008, petitioner entered a guilty plea to a reduced charge in Count 1 of murder in violation of Ohio Rev Code § 2903.02(A) with firearm specification. (*See id.*, Ex. 2). On the same date, the trial court sentenced petitioner to an agreed-to aggregate prison term of 18 years to life, which consisted of consecutive terms of imprisonment of 15 years to life for the murder offense and 3 years for the firearm specification. (*Id.*, Exs. 4, 52 & Trial Tr. 1, at PAGEID#: 721). In addition, the trial court ordered that the sentence run consecutively to a five-year prison term imposed in another prior case—Scioto County Common Pleas Court Case No. 04-CR-853. (*See id.* & Trial Tr. 9, at PAGEID#: 729).[2] It appears from the docket record for Case No. 08-CR-467 that petitioner's guilty plea and sentence were entered on the record on June 3, 2008. (*See id.*, Ex. 52). Respondent states that petitioner did not pursue a timely appeal to the Ohio Court of Appeals from the final judgment entry. (Doc. 9, p. 3, at PAGEID#: 734).

## 2. February 1, 2010 Motion To Withdraw Guilty Plea

On February 1, 2010, well over a year and half after the final judgment entry was issued in

---

[2] It appears from the record that in the prior case, which involved arson charges, petitioner was granted release on Community Control. (*See* Doc. 8, Trial Tr. 9, at PAGEID#: 729). At the hearing held on May 30, 2008 in Case No. 08-CR-467, the trial court revoked the order of conditional release and re-imposed the original five-year prison sentence before ordering that the sentence be served consecutively to the aggregate prison sentence in Case No. 08-CR-467. (*Id.*). In January 2016, petitioner filed a habeas corpus petition challenging his conviction and sentence in Case No. 04-CR-853 with this Court. *See Heid v. Warden, Ross Corr. Inst.*, No. 1:16-cv-234 (Black, J.; Litkovitz, M.J.) (Doc. 1). On February 14, 2017, the District Court adopted the magistrate judge's Report and Recommendation to grant the respondent's motion to dismiss the petition with prejudice on the ground that the petition was time-barred. *Id.* (Docs. 21, 27-28). It appears from this Court's docket record for Case No. 1:16-cv-234 that the matter is currently pending on appeal before the United States Court of Appeals for the Sixth Circuit. *See id.* (Docs. 29-30).

Case No. 08-CR-467, petitioner filed a *pro se* motion to withdraw his guilty plea with the trial

court. (Doc. 8, Ex. 5). Petitioner claimed in that motion that his trial counsel was ineffective and

"misled" petitioner to enter a guilty plea to a charge that was "more severe" than it "should have

been" because the offense "was a crime of passion . . . committed in the heat of an emotionally

charged moment, with no opportunity to reflect on what [was] happening, and was done in the heat

of passion." (*Id.*, at PAGEID#: 54). On April 16, 2010, the trial court denied the motion without

opinion. (*Id.*, Ex. 6). Petitioner next filed a motion requesting that the trial court issue findings of

fact and conclusions of law in support of its ruling denying his motion to withdraw guilty plea.

(*Id.*, Ex. 7). On July 22, 2010, the trial court denied the motion on the ground that "findings of fact

and conclusions of law are not required in the defendant's motion to withdraw a plea." (*Id.*, Ex. 8).

Respondent states that petitioner did not pursue an appeal in that matter. (Doc. 9, p. 3, at

PAGEID#: 734).

### 3. Motions for Transcripts/Records

Three months later, on October 21, 2010, petitioner filed a *pro se* motion requesting "all

Court Transcripts" in Case No. 08-CR-467. (Doc. 8, Ex. 9). On February 18, 2011, the trial court

denied the motion and informed petitioner that he could "request transcripts of his proceedings at

his own expense and should notify the court reporter should he still desire to receive a transcript."

(*Id.*, Ex. 10).

Approximately eighteen months later, petitioner submitted another request for transcripts

as an "indigent defendant" together with a financial affidavit dated July 10, 2013. (*Id.*, Ex. 11). In

addition, petitioner filed motions on August 21, 2013 and May 13, 2014 requesting that records be

provided to him free of charge. (*See id.*, Exs. 12-13). On June 23, 2014, the trial court denied

3

those motions as "not well taken." (*Id.*, Ex. 14).

On July 22, 2014, petitioner filed another *pro se* motion "for court records without costs," arguing that the information was needed for purposes of pursuing a delayed appeal to the Ohio Court of Appeals and state post-conviction relief. (*Id.*, Ex. 15). The trial court denied that motion on August 20, 2014. (*Id.*, Ex. 16).

On August 28, 2014, petitioner filed yet another *pro se* motion requesting "court records without costs." (*Id.*, Ex. 17). In that motion, petitioner reiterated that the information was needed to prepare a delayed appeal to the Ohio Court of Appeals and further contended in a reply memorandum that the requested documents were "all public record" and were required to be provided pursuant to the Freedom of Information Act (FOIA) and Ohio Rev. Code § 149.43. (*See id.* & Ex. 18). On October 6, 2014, the trial court summarily denied the motion. (*Id.*, Ex. 19). Petitioner appealed that ruling to the Ohio Court of Appeals, Fourth Appellate District, arguing that the trial court abused its discretion and violated petitioner's constitutional rights to due process and equal protection by refusing to grant him access to the court records. (*See id.*, Exs. 20-21). On April 15, 2015, the Ohio Court of Appeals issued a decision rejecting petitioner's claim of error and affirming the trial court's judgment. *See State v. Heid*, Nos. 14CA3668, 14CA3669, 2015 WL 1774336 (Ohio Ct. App. Apr. 15, 2015). Respondent states that petitioner did not pursue a further appeal to the Ohio Supreme Court in that matter. (Doc. 9, p. 5, at PAGEID#: 736).

### 4. November 17, 2014 Motion for Delayed Appeal (Case No. 14CA3670)

On November 17, 2014, petitioner filed a *pro se* notice of appeal and motion for leave to file a delayed appeal to the Ohio Court of Appeals, Fourth Appellate District, from the judgment of conviction and sentence entered over six years earlier, on June 3, 2008. (Doc. 8, Exs. 24-25).

Petitioner provided the following reasons for his delay in filing:

> [T]he reasons for the delay are not because of [petitioner's] own carelessness, inattention, or willful disregard of the Court's process, but that the hindrance is due in part to the care and vigilance of counsel. . . .  While being sentenced, Appellant specifically asked counsel if I could appeal so another Court would give me a chance to be heard . . . to which counsel replied that I had no right to appeal. . . .
>
> Upon arrival at ODRC on June 8, 2008 AD, the reception prison to which I was placed operated on a procedure that keeps inmates locked down for twenty-three hours of the day.  Therefore, while there for about six months, I had no access to the legal library known to me.  Furthermore, the legal clerks there would only speak with inmates who had taken their cases to trial. . . .  Upon arrival at my parent institution, Ross Correctional Institution ("RCI"), I asked inmate legal clerks about a right to appeal, and was re-informed that a guilty plea waives a right to appeal.  While trying to learn the steps to take in order to obtain an appeal[]able order, I was in and out of the 'hole.'  Being in the 'hole' was an impairment to learning the legal steps to take, which also created a longer delay to what procedures to take.  While not in the 'hole,' the library schedule produces its own burdens, as the line can be difficult to get on and those ahead of you can use up all their pass time without having to return to the block until the library is closed.  Some days the library would just be cancelled.  As we only have library eight times a month this is an impediment.

(*Id.*, Ex. 25, at PAGEID#: 159-60).  Petitioner also contended that the delay was due in part to (1) his lack of training in the law "with very little legal assistance to guide [him] through the process"; and (2) his focus on obtaining relief in Case No. 04-CR-853, which caused him "to push this litigation back as [he did] not have the financial abilities to attempt to adjudicate both cases at the same time."  (*Id.*, at PAGEID#: 164).  Petitioner further asserted that he had a colorable claim to raise on appeal because his trial counsel was ineffective and coerced him to plead guilty to murder although he "did not intentionally or purposely cause the death of [his] uncle."  (*See id.*, at PAGEID#: 167-68).

On December 16, 2014, the Ohio Court of Appeals denied petitioner's motion for leave to file a delayed appeal on the ground that petitioner had "not presented an adequate explanation to

justify granting him leave to file a delayed appeal over six years after his conviction and sentencing." (*Id.*, Ex. 26).[3]

Petitioner timely appealed that decision to the Ohio Supreme Court. (*See id.*, Ex. 31). In his memorandum in support of jurisdiction, petitioner asserted as propositions of law that (1) he was denied a speedy trial and the effective assistance of counsel when his attorney "misadvised [him] of the affirmative defense of Voluntary Manslaughter" and coerced him to enter the guilty plea; and (2) he was deprived of his rights under the First, Fifth and Fourteenth Amendments because he was not treated fairly or equally when the "trial court deviated from the legal rule of Sup.R.20" and provided him with counsel who was ineffective. (*See id.*, Ex. 32). On May 20, 2015, the Ohio Supreme Court declined to accept jurisdiction of the appeal. (*Id.*, Ex. 33).

### 5. November 17, 2014 Motion To Withdraw Guilty Plea

On November 17, 2014, the same date petitioner filed his motion for delayed appeal to the Ohio Court of Appeals, petitioner filed a second *pro se* motion to withdraw his guilty plea with the trial court. (Doc. 8, Ex. 34). Petitioner later filed an amendment to the motion and supporting memoranda. (*See id.*, Exs. 35, 37, 38). It appears from petitioner's pleadings that he was essentially asserting the same ineffective-assistance-of-counsel claim that he had raised in his prior motion to withdraw his plea and motion for delayed appeal to the Ohio Court of Appeals. (*See id.*). Respondent states that the "trial court did not rule on [this] motion." (Doc. 9, p. 7, at PAGEID#: 738). Both parties have averred that the trial court lacked jurisdiction to rule on the

---

[3] It is noted that petitioner thereafter filed a motion for reconsideration, which the Ohio Court of Appeals allowed him to amend. (*See* Doc. 8, Exs. 27, 29-30). On March 31, 2015, the Ohio Court of Appeals denied petitioner's application for reconsideration on the basis of both the merits of the underlying claim that petitioner was seeking to raise on appeal and the inadequacy of his "litany of reasons" to "explain or justify" his over six-year delay in filing. (*See id.*, Ex. 30). It appears from the record presented that petitioner did not appeal that ruling to the Ohio Supreme Court.

motion due to petitioner' pending appeals in the Ohio Court of Appeals. (*Id.*; *see also* Doc. 13, at PAGEID#: 767-68). "[U]nder Ohio law, when the trial court fails to rule on a motion, it must be presumed that the motion was denied." *Edwards v. Warden, Ross Corr. Inst.*, No. 1:08cv850, 2009 WL 6600255, at *5 (S.D. Ohio Dec. 17, 2009) (Hogan, M.J.) (Report & Recommendation) (citing *State v. Olah*, 767 N.E.2d 755, 760 n.2 (Ohio Ct. App. 2001)), *adopted*, 2010 WL 2519659 (S.D. Ohio June 17, 2010) (Spiegel, J.); *see also Peterson v. Warden, Pickaway Corr. Inst.,* No. 1:14cv604, 2015 WL 3970171, at *2 (S.D. Ohio June 30, 2015) (Bowman, M.J.) (Report & Recommendation) (and cases cited therein), *adopted*, 2015 WL 3970266 (S.D. Ohio June 30, 2015) (Dlott, J.).[4]

### 6. March 13, 2015 Petition for Post-Conviction Relief

On March 13, 2015, petitioner filed a *pro se* petition for post-conviction relief pursuant to Ohio Rev. Code § 2953.21 with the trial court based on the same allegations of ineffective assistance by trial counsel in inducing his guilty plea. (Doc. 8, Ex. 40). In subsequent pleadings, petitioner also contended, as he had in the delayed appeal proceedings, that he was deprived of "adequate representation" at trial because of the court's failure to abide by "Sup.R.20," which was enacted by the Ohio General Assembly "to govern Ohio's Courts in capital cases." (*Id.*, Ex. 41, at PAGEID#: 582). As supporting evidence, petitioner submitted his own affidavit and a letter dated September 12, 2014 from "Thomas Starr" regarding conversations that Starr had with petitioner's trial counsel and the prosecutor during the plea negotiations. (*See id.,* Ex. 40, at PAGEID#: 567-

---

[4] It is further noted that in a decision issued on April 26, 2016 on appeal from the denial of petitioner's subsequent petition for post-conviction relief, the Ohio Court of Appeals stated that the November 2014 motion to withdraw guilty plea was "unsuccessful." *See State v. Heid*, No. 15CA3710, 2016 WL 1733427, at *1 (Ohio Ct. App. Apr. 26, 2016).

72). Petitioner also submitted additional exhibits, including Detective Denver Triggs'

"Investigator Notes" dated December 23, 2007, detailing what was said during petitioner's

videotaped interview at the police station a few days after the incident giving rise to the criminal

charges took place, as well as the evidence uncovered during the course of the investigation that

matched petitioner's account of the events that had occurred. (*See id.*, Ex. 42, at PAGEID#: 641).

On August 27, 2015, the trial court denied petitioner's petition for post-conviction relief,

reasoning in relevant part as follows:

> The Court finds the Defendant has not presented sufficient justification for filing his
> motion outside the time permitted by law. The information in his statement to law
> enforcement was available to Defendant so that he could file his petition timely
> after his conviction.
>
> Defendant's claim also lacks merit. Defendant mistakenly called manslaughter an
> affirmative defense. Manslaughter does not appear to be "an available course of
> action" based upon Defendant's statements to the officer. The actions of his
> counsel described by Defendant are within the standards of legal competency.
>
> Defendant attached Detective Denver Triggs['] investigative notes to his reply
> memorandum. Defendant's statements to Triggs show that he committed the crime
> purposely. Defendant cannot realistically claim "crime of passion" when he hid in
> the woods and waited. Then he kicked in the trailer door and ran in with pistols out.
> He then ran to the rear of the trailer, got into an altercation with the victim and shot
> him multiple times.

(*Id.*, Ex. 44).

Petitioner timely appealed the trial court's ruling to the Ohio Court of Appeals, Fourth

Appellate District. (*See id.*, Exs. 45-46).[5] On April 26, 2016, the Ohio Court of Appeals affirmed

---

[5] It is noted that on November 13, 2015, a couple of months after petitioner initiated the appeal, petitioner
filed a motion with the trial court renewing his request for the court record, which petitioner claimed was "necessary"
for the adjudication of the pending appeal. (*See* Doc. 8, Ex. 50). On March 25, 2016, the trial court denied the motion.
(*See id.*, Ex. 52). Petitioner apparently filed a notice of appeal from that decision to the Ohio Court of Appeals, Fourth
Appellate District. However, the appeal had a number of deficiencies, which petitioner failed to correct in accordance
with orders issued by the appellate court. (*See id.*, Ex. 51). Therefore, the Ohio Court of Appeals *sua sponte*

the trial court's denial of post-conviction relief without a hearing on the ground that the petition was "untimely and was barred by res judicata." *State v. Heid*, No. 15CA3710, 2016 WL 1733427, at *4 (Ohio Ct. App. Apr. 26, 2016). In so ruling, the court reasoned as follows:

> Heid claims that his petition was reviewable because he was unavoidably prevented from the discovery of the unsworn letter purportedly sent to him by Tom Starr in September 2014. We reject this argument. Nothing in the letter or in Heid's affidavit explains how he was unavoidably prevented from obtaining this information from Starr until over six years after his conviction. Evidently, Starr is Heid's friend or acquaintance, but Heid provides no explanation why he waited so long after his conviction to obtain what he considers to be critical evidence supporting his claim that he was coerced into pleading guilty to murder. . . .

> Likewise, res judicata bars Heid from raising his claim of ineffective assistance of his trial counsel in his petition for post-conviction relief after he repeatedly raised this claim in prior post-sentencing motions to withdraw his guilty plea. . . . Because Heid raised his ineffective-assistance-of-counsel claim as early as his 2010 motion to withdraw his guilty plea and in his subsequent 2014 motion to withdraw his guilty plea, res judicata bars him from raising the same claim or any other claim he could have raised in his first post-conviction proceeding.

> Finally, on appeal Heid raises a claim that his due-process rights were violated because the trial court failed to appoint him two trial counsel in accordance with former Sup.R. 20, now Appt.Coun.R. 5.02. The trial court did not err by ignoring this claim because Heid's petition was untimely and he failed to raise it in his petition. Instead he raised it in a subsequent memorandum in which he requested that the trial court take judicial notice of the rule and the affidavits of three capital defendants in which they stated that they were appointed two trial attorneys in their capital cases. Moreover, res judicata barred Heid from raising this claim when he could have raised it on appeal or in one of his many post-sentence motions. And unlike the other defendants, who were charged with capital offenses including death penalty specifications . . . entitling them to representation from at least two attorneys . . ., Heid was not charged with any death-penalty specifications for his aggravated-murder charge. Thus, he was not entitled to be represented by two attorneys in his criminal proceeding.

*Id.* at *3-4 (Ohio case citations omitted).

Respondent states that petitioner did not pursue a further appeal to the Ohio Supreme

dismissed the appeal on July 15, 2016. (*Id.*).

Court. (Doc. 9, p. 10, at PAGEID#: 741). It appears from the record that petitioner attempted to appeal the Ohio Court of Appeals' ruling to the Ohio Supreme Court. (*See* Doc. 13, at PAGEID#: 770 ¶21). However, the appeal documents were returned to petitioner due to his failure to submit a memorandum in support of jurisdiction as required by the Rules of Practice of the Supreme Court of Ohio. (*See id.* & PAGEID#: 813). Petitioner states that he could not perfect a timely appeal to the Ohio Supreme Court because he received the letter informing him that "he had until June 10, 2016 . . . to fix deficiencies" on June 6, 2016. (*Id.*, at PAGEID#: 770 ¶21).

## B. Federal Habeas Corpus Petition

Petitioner commenced the instant habeas corpus action on March 19, 2016. (*See* Doc. 1).[6]

In the petition, petitioner asserts three grounds for relief:

> **Ground One:** Mr. Heid's protected rights of due process and equal protection of law were violated.
>
> **Supporting Facts:** The court upon its own volition in cases that charge a defendant with agg. Murder and one or more specifications of aggravated circumstances appoints two attorneys for defense counsel. . . . Heid was officially indicted for agg. Murder; firearm specification; burglary; agg. Robbery; tamp. with evidence; and theft of a Motor Vehicle. Yet at no time was Heid afforded two defense counsels to represent him as afforded others in similar circumstances. . . .
>
> **Ground Two:** Mr. Heid was deprived of his constitutional right of the effective assistance of counsel.
>
> **Supporting Facts:** Counsel was an acting agent on behalf of the state who, on 5-30-08 AD, secured them a guilty plea. During the pendency of this case, counsel provided no advice in support of any defense, nor did he disclose any evidence with

---

[6] It is well-settled that the filing date of a federal habeas corpus petition submitted by a *pro se* prisoner is the date on which the prisoner provides his papers to prison authorities for mailing. *See Houston v. Lack,* 487 U.S. 266 (1988); *see also Miller v. Collins,* 305 F.3d 491, 497-98 (6th Cir. 2002); *Goins v. Saunders,* 206 F. App'x 497, 499 n.1 (6th Cir. 2006). Here, however, petitioner has averred in the petition that he placed the petition in the prison mailing system on March 21, 2016, which is two days *later* than the date of filing reflected in this Court's docket record. (*See* Doc. 1, at PAGEID#: 11). Therefore, the actual filing date set forth in the docket report is deemed to be the date of filing in this particular case.

Heid that supported Heid's defense claim – manslaughter. Counsel manipulated Heid's understanding of the law by leading Heid to believe that "crime of passion" does not exist and that Manslaughter was unavailable – leading Heid to believe these were separate issues instead of clearing up the confusion by advising Heid that "crime of passion" is Manslaughter and how that's applicable or inapplicable (simply explain the elements). Counsel, knowing that Heid heard his lover and paramour engaged in sex, deliberately led Heid to believe his deceptive advice. This deception affected Heid's decision making capabilities in relation to plea or go to trial.

Counsel's misrepresentation quashed the available defense of Manslaughter, and on 5-29-08 AD at about 6 PM, presented an election which in[ci]ted fear and led Heid to deduce an unreasonable decision. Counsel related to Heid two options: one a choice that Heid will never see freedom and his family again; and the other an opportunity to be free in 15-years. The pressure by counsel caused Heid to yield to coercion. In Heid's brow-beatened state of mind, he made one last-ditch effort to re-affirm his defense and asked to call Tom Starr to speak about all of the options. Counsel called Tom on his cell phone, persuaded Tom the 15-year deal was the best option, and then permitted Heid to speak to Tom. These acts induced Heid to plea[d] guilty.

During the morning hours of 5-30-08 AD Heid reluctantly pled guilty to what he believed was a 15-year to life sentence. The court sentenced Heid to 22-years-to-life. During imposition of sentence, Counsel stated to Heid that he had no right to appeal, it was not allowed.

Heid was not provided two attorneys for representation nor competent assistance of counsel. This structural error affected the course of events and the outcome of the case.

**Ground Three:** Mr. Heid's guilty plea is unconstitutional and therefore invalid.

**Supporting Facts:** Heid was induced to commit an act of self-incrimination due to counsel's misrepresentation. This deprived Heid of a fair trial. This inducement involved counsel persuading a third-party and then having that person unknowingly aid counsel in inducing Heid to plea[d] guilty. Ultimately divesting Heid of due course of law. This plea was compelled by counsel's advice; advice that suppressed an available course of defense. Had I had an accurate understanding of the relevant law, I would not have pled guilty. Counsel uttered threats and presented an act of estoppel by election that incited fear and anxiety and compelled the plea among the options he developed for Heid to elect from.

(*Id.*, at PAGEID#: 5-8).

Respondent has filed a motion to dismiss the petition. (Doc. 9). Respondent contends that the petition is subject to dismissal with prejudice because it is barred from review by the applicable one-year statute of limitations governing federal habeas actions by state prisoners, which is set forth in 28 U.S.C. § 2244(d). (*See id.*). Petitioner has filed a brief opposing the motion to dismiss. (Doc. 13).

## II. RESPONDENT'S MOTION TO DISMISS (DOC. 9) SHOULD BE GRANTED BECAUSE THE PETITION IS TIME-BARRED

Under 28 U.S.C. § 2244(d)(1), as amended by § 101 of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214, a person in custody pursuant to the judgment of a state court must file an application for a writ of habeas corpus within one year from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). Under 28 U.S.C. § 2244(d)(2), the limitations period is tolled during the pendency of a properly filed application for state post-conviction relief or other collateral review.

The Court must first determine which limitations provision contained in 28 U.S.C. § 2244(d)(1) applies to petitioner's grounds for habeas corpus relief. Respondent argues that

petitioner's claims are governed by the one-year statute of limitations set forth in § 2244(d)(1)(A) because the factual bases for those claims arose and were discoverable in the exercise of due diligence before petitioner's conviction became final in 2008. (*See* Doc. 9, p. 14, at PAGEID#: 745). In contrast, petitioner contends that § 2244(d)(1)(B) governs the case-at-hand and that the statute of limitations did not begin to run until May 20, 2015, the date the Ohio Supreme Court issued the final ruling in the delayed appeal proceedings, because his "State appointed attorney impeded a timely appeal process" by erroneously advising him that he did not have a right to appeal his conviction. (*See* Doc. 13, ¶¶24-26, at PAGEID#: 771). The undersigned is not persuaded by petitioner's argument.

As the Sixth Circuit recently pointed out, "Section 2244(d)(1)(B) requires a causal relationship between the unconstitutional state action [i.e., ineffective assistance imputed to the state] and [the petitioner's] being prevented from filing the petition." *Webb v. United States*, __ F. App'x __, No. 14-5380, 2017 WL 655774, at *5 (6th Cir. Feb. 17, 2017) (quoting *Waldron v. Jackson*, 348 F. Supp.2d 877, 883 (N.D. Ohio 2004)). Petitioner is unable to show a causal relationship that would connect his attorney's alleged ineffectiveness in preventing him from filing a timely appeal to the Ohio Court of Appeals with his ability to file a federal habeas petition in a timely manner. *See, e.g., Winkfield v. Bagley*, 66 F. App'x 578, 582-83 (6th Cir. 2003) (in a case where the petitioner claimed that he was prevented from filing a timely habeas petition because his appellate counsel "actively misled him into believing [a new trial motion] and his direct appeal were still pending," the Sixth Circuit rejected the argument that § 2244(d)(1)(B) applied because there was "[n]o connection" between counsel's ineffective assistance regarding the state action and the petitioner's "ability to file a federal habeas petition"); *Miller v. Cason*, 49 F. App'x 495, 497

13

(6th Cir. 2002) (rejecting the petitioner's argument that the State "impeded the filing of his federal habeas petition by failing to give him notice of his appeal rights at sentencing" because the petitioner failed to explain how the action, which "may have interfered with [his] direct appeal in state court in the early 1990s, . . . prevented him from filing his federal habeas corpus petition until 2001"); *see also Baker v. Wilson,* No. 5:06cv1547, 2009 WL 313325, at *8 (N.D. Ohio Feb. 6, 2009) (citing *Miller* and numerous district court decisions) (in holding that "a state court's failure to advise a petitioner of his appellate rights at sentencing was not a state-created impediment that prevented him from filing his federal habeas petition," the district court pointed out that "[t]he Sixth Circuit is joined by several other courts in finding that the state-created impediment must prevent the petitioner from filing a federal habeas action, not just a direct appeal in state court"); *Neff v. Brunsman,* No. 1:06cv135, 2007 WL 912122, at *4, 7-8 (S.D. Ohio Mar. 23, 2007) (Spiegel, J.; Black, M.J.) (rejecting the argument that the failure to inform the petitioner of his right to an appeal amounted to a "state-created impediment" triggering application of the statute of limitations set forth in § 2244(d)(1)(B) because no "causal relationship" was established showing that the allegedly unconstitutional state action prevented the petitioner from filing a timely federal habeas petition). *Cf. Webb, supra*, 2017 WL 655774, at *3-5 (in a case involving the analogous limitations provision for petitions filed pursuant to 28 U.S.C. § 2255, the Sixth Circuit relied in part on *Winkfield* and *Miller* in rejecting the petitioner's argument that he was prevented from filing his § 2255 petition because his counsel "led him to believe that he could not appeal . . . and did not consult with him about an appeal"). Therefore, contrary to petitioner's contention, the limitations provision set forth in § 2244(d)(1)(B) does not apply to the case-at-hand.

In addition, the undersigned rejects petitioner's contention that the statute of limitations did

not begin to run until May 20, 2015, when the Ohio Supreme Court declined to accept jurisdiction

of petitioner's appeal from the Ohio Court of Appeals' denial of his motion for delayed appeal.

(*See* Doc. 8, Ex. 33).  In his three grounds for relief, petitioner essentially claims that two attorneys

should have been appointed to represent him because the indictment involved an aggravated

murder charge and that his trial counsel was ineffective and his guilty plea entered on May 30,

2008 was invalid because he was improperly induced by his counsel to plead guilty to murder

instead of manslaughter.  The factual bases for those claims arose and were discoverable in the

exercise of due diligence by the time petitioner's conviction became final on July 3, 2008, when

the 30-day period expired for filing a timely appeal to the Ohio Court of Appeals from the June 3,

2008 final judgment entry of conviction and sentence.  *See* Ohio R. App. P. 4(A).  As a general

rule, the statute of limitations set forth in 28 U.S.C. § 2244(d)(1)(A) applies to such claims.  Under

that provision, the statute of limitations would have begun to run two days later, on July 5, 2008,

after taking into account the July 4th holiday.[7]  Contrary to petitioner's suggestion, petitioner's

unsuccessful motion for leave to file a delayed appeal to the Ohio Court of Appeals, filed over six

years later on November 17, 2014, does not affect the finality determination under 28 U.S.C. §

2244(d)(1)(A), nor does it otherwise serve to restart the running of the statute-of-limitations clock.

*See, e.g.*, *Keeling v. Warden, Lebanon Corr. Inst.,* 673 F.3d 452, 459-60 (6th Cir. 2012) (rejecting

the petitioner's argument that his conviction did not become final under § 2244(d)(1)(A) until after

---

[7] It is well-settled that the statute of limitations set forth in § 2244(d)(1)(A) commences running one day after a petitioner's conviction becomes final. *See* Fed. R. Civ. P. 6(a); *Bronaugh v. Ohio,* 235 F.3d 280, 285 (6th Cir. 2000). Because petitioner's conviction became final on July 3, 2008 and the following day was a holiday, the undersigned has assumed that the statute would not have commenced running until the day after July 4, 2008.

his motion for delayed appeal was denied by the Ohio Supreme Court);[8] *Quillen v. Warden, Marion Corr. Inst.,* No. 1:12cv160, 2013 WL 1315089, at *5 (S.D. Ohio Mar. 29, 2013) (Barrett, J.) (and numerous cases cited therein) (holding the magistrate judge had "correctly found" that the petitioner's motions for delayed appeal to the Ohio Court of Appeals and Ohio Supreme Court "did not restart the running of the statute of limitations under § 2244(d)(1)(A)"); *Pierce v. Warden, Ross Cnty. Corr. Inst.*, No. 3:10cv132, 2012 WL 5511220, at *13 (S.D. Ohio Nov. 14, 2012) (Report & Recommendation) (citing *Keeling* in support of holding that because the Ohio Court of Appeals "never re-opened" the petitioner's "direct appeal—i.e., it denied his motion for delayed appeal," the proceedings held on the delayed appeal motion did not factor into the § 2244(d)(1)(A) finality determination), *adopted*, 2013 WL 811568 (S.D. Ohio Mar. 5, 2013).[9] Therefore, unless another limitations provision may be invoked, the one-year statute of limitations set forth in § 2244(d)(1)(A), which began to run on July 5, 2008, governs petitioner's grounds for relief.

As respondent has pointed out in the motion to dismiss (*see* Doc. 9, pp. 16-17, at PAGEID#: 747-48), 28 U.S.C. § 2244(d)(1)(D) is the only remaining limitations provision that is arguably applicable here. Under that provision, the statute of limitations does not commence to

---

[8] In *Keeling*, 673 F.3d at 459, the Sixth Circuit recognized the Supreme Court's "narrow" holding in *Jimenez v. Quarterman*, 555 U.S. 113 (2009), that the *granting* of a delayed appeal within the one-year limitations period renders a conviction non-final for statute of limitations purposes because the ruling restores the pendency of the direct appeal. However, the Sixth Circuit went on to point out that the Supreme Court later made it clear in *Gonzalez v. Thaler*, 565 U.S. 134 (2012), that in contrast to the unique circumstances presented in *Jimenez*, a judgment typically becomes "final" under § 2244(d)(1)(A) when either (1) the Supreme Court affirms a conviction or denies a petition for certiorari filed by a petitioner who pursues direct review "all the way up" to the Supreme Court, or (2) "[f]or all other petitioners, . . . the time for pursuing direct review . . . in state court[] expires." *Keeling*, 673 F.3d at 459-60 (quoting *Gonzalez*, 565 U.S. at 150).

[9] In addition, petitioner is unable to prevail on any claim that his post-conviction motions to withdraw his guilty plea restarted the running of the statute-of-limitations clock. *See Eberle v. Warden, Mansfield Corr. Inst.*, 532 F. App'x 605, 608-09 (6th Cir. 2013) (holding that a motion to withdraw a guilty plea in Ohio does not serve to restart the AEDPA's one-year statute of limitations or otherwise alter the date on which a conviction becomes final under § 2244(d)(1)(A)).

run until the "factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." As discussed above, it appears from the record presented that the factual predicate for petitioner's three grounds for relief could have been discovered through the exercise of due diligence before petitioner's conviction became final. However, because petitioner has suggested in Ground Two that his trial counsel was ineffective for advising him that he had no right to appeal his conviction and sentence, an argument can be made that the later limitations provision applies if petitioner exercised reasonable diligence in discovering the factual basis for that claim.

The petitioner bears the burden of proving that he exercised due diligence for the purpose of triggering § 2244(d)(1)(D)'s applicability. *See DiCenzi v. Rose*, 452 F.3d 465, 471 (6th Cir. 2006) (citing *Lott v. Coyle*, 261 F.3d 594, 605-06 (6th Cir. 2001)); *see also Archey v. Warden Madison Corr. Inst.*, No. 2:15cv2832, 2016 WL 7102980, at *3 (S.D. Ohio Dec. 6, 2016) (Report & Recommendation), *adopted*, 2017 WL 39612 (S.D. Ohio Jan. 4, 2017). Petitioner has not met his burden in this case. The record is devoid of any information as to when exactly petitioner obtained knowledge of his right to an appeal or about any actions taken by petitioner during the period following his sentencing on May 30, 2008 to discover that right.[10] Petitioner waited over a

---

[10] Although the record is devoid of any information as to the exact date petitioner allegedly learned that he had a right to appeal his conviction and sentence, an argument can be made that petitioner may have known of that right as early as October 2010 when he filed his first motion requesting that the trial transcript be provided to him. (*See* Doc. 8, Ex. 9). *Cf. Bandy v. Smith*, No. 1:08cv2780, 2010 WL 300704, at *3 (N.D. Ohio Jan. 19, 2010) (in holding that the petitioner was not entitled to equitable tolling of the statute of limitations based on his claim that he was never instructed about his right of appeal, the court pointed out that, although it was unclear what petitioner was seeking in an early-filed *pro se* motion requesting that the transcript be provided at the State's expense, "it indicates that he had some knowledge of his right [to] an appeal"). Indeed, petitioner has conceded in his memorandum in opposition to the motion to dismiss that he "learned of a right to appeal" at some point before August 21, 2013, when he filed a renewed request for transcripts and court records. (*See* Doc. 13, at PAGEID#: 765 ¶6). Although it is thus clear that petitioner knew before August 21, 2013 that he had a right to appeal his conviction and sentence, he was not diligent in pursuing that right as he waited until November 17, 2014, well over a year later, to file his motion for

year and a half after he was sentenced to even seek collateral-review relief in the state trial court by way of a motion to withdraw his guilty plea. Moreover, it is clear from the present record that petitioner took no action following the trial court's denial of that motion on July 22, 2010 to pursue an appeal from the court's ruling, to seek a delayed appeal from the original judgment entry of conviction and sentence, or to make any further application for post-conviction relief until over four years thereafter, on November 17, 2014. (*See* Doc. 8, Exs. 8, 24, 34). In his motion filed on November 17, 2014 seeking leave to file a delayed appeal to the Ohio Court of Appeals, petitioner failed to provide any explanation as to why it took so many years for him to discover that his counsel had misinformed him about his right of appeal. (*See id.*, Ex. 25). Petitioner contended in his motion for delayed appeal that his delay in filing was due to the fact that he had only limited access to the prison library, that he lacked legal training or assistance, and that he was prevented from filing a timelier motion because he was also trying at the same time to challenge his separate arson convictions in Case No. 04-CR-853. (*Id.*). However, because petitioner waited over six years after sentencing to seek appellate review of his conviction and sentence, those justifications are simply insufficient to explain his lengthy delay in either learning about or pursuing such relief. *Cf. Archey, supra,* 2016 WL 7102980, at *3 (and cases cited therein) (in finding the petitioner had not established "that he acted diligently in learning of his right to appeal," the court pointed out that petitioner waited approximately six and one-half years from the date of sentencing to file a motion for delayed appeal and failed "to explain what action he took, if any, to learn about his right to appeal" and did not "identify any factor that would have prevented him from learning about the right to appeal" at an earlier point in time); *Williams v. Jenkins*, No. 2:16cv666, 2016

---

delayed appeal with the Ohio Court of Appeals.

WL 3745765, at *4 (S.D. Ohio July 13, 2016) (Report & Recommendation) (and cases cited therein) (finding that the petitioner "failed to establish he acted diligently" for purposes of triggering § 2244(d)(1)(D)'s applicability because he "waited more than six years after sentencing to file a collateral action in the state trial court," did "not indicate that he took any action during this time to learn about his right to appeal" or "any reason that would have prevented him from earlier learning about the right to appeal," and was not prevented by his "conditions of confinement . . . from visiting the prison's law library or learning about the right to appeal"), *adopted*, 2016 WL 4394136 (S.D. Ohio Aug. 18, 2016). *Cf. Bandy v. Smith*, No. 1:08cv2780, 2010 WL 300704, at *3 (N.D. Ohio Jan. 19, 2010) (in a case where the petitioner "waited six years after his time for direct appeal expired before filing his delayed appeal," the court found that the statute of limitations was not equitably tolled based on petitioner's claim that he was never instructed about his right to appeal because petitioner "failed to present any evidence that he diligently pursued his rights").

Therefore, the undersigned concludes that, as respondent has argued, petitioner's claims are governed by the one-year statute of limitations set forth in 28 U.S.C. § 2244(d)(1)(A). As discussed above, that statute commenced running on July 5, 2008 and expired one year later on July 5, 2009 absent application of statutory and equitable tolling principles.

During the one-year limitations period that commenced on July 5, 2008, petitioner was entitled to tolling of the statute under 28 U.S.C. § 2244(d)(2) based on any pending "properly filed" applications for state post-conviction relief or other collateral review. *See* 28 U.S.C. § 2244(d)(2); *see also Holland v. Florida,* 560 U.S. 631, 635 (2010); *Allen v. Siebert,* 552 U.S. 3, 4 (2007) (per curiam); *Vroman v. Brigano,* 346 F.3d 598, 602 (6th Cir. 2003). "The tolling provision

does not, however, 'revive' the limitations period (i.e., restart the clock at zero); it can only serve to pause a clock that has not yet fully run." *Vroman,* 346 F.3d at 602 (quoting *Rashid v. Khulmann,* 991 F. Supp. 254, 259 (S.D.N.Y. 1998)). Once the limitations period is expired, state collateral review proceedings can no longer serve to avoid the statute of limitations bar. *Id.*

In this case, petitioner did not take any action during the one-year period that ended on July 5, 2009 to challenge his conviction and sentence. Neither petitioner's pleadings filed with the trial court on February 1, 2010, November 17, 2014, and March 3, 2015 seeking state post-conviction relief and the withdrawal of his guilty plea nor his November 17, 2014 motion for leave to file a delayed appeal to the Ohio Court of Appeals from the original judgment of conviction and sentence could serve to toll the already expired limitations period.[11] Therefore, absent application of equitable tolling principles, petitioner's grounds for habeas relief are barred from review because the statute of limitations ran its course on July 5, 2009, well over six and one-half years before the instant action commenced on March 19, 2016.

The AEDPA's statute of limitations is subject to equitable tolling, *see Holland,* 560 U.S. at 645, "when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond the litigant's control." *Hall v. Warden, Lebanon Corr. Inst.,* 662 F.3d 745, 749 (6th Cir. 2011) (quoting *Robertson v. Simpson*, 624 F.3d 781, 783 (6th Cir. 2010)). Equitable

---

[11] As respondent has stated in the motion to dismiss (*see* Doc. 9, p. 15, at PAGEID#: 746), petitioner's numerous motions for court records and transcripts, which were also filed after the statute of limitations had run its course, were not applications for state post-conviction relief or other collateral review. They thus could not have served to toll the statute of limitations under 28 U.S.C. § 2244(d)(2) even if they had been filed while the statute was still running. *See Johnson v. Randle,* 28 F. App'x 341, 343 (6th Cir. 2001); *see also Heid v. Warden, Ross Corr. Inst.,* No. 1:16cv234, 2016 WL 8254930, at *2 n.5 (S.D. Ohio Nov. 21, 2016) (Litkovitz, M.J.) (Report & Recommendation) (and cases cited therein), *adopted,* 2017 WL 590319 (S.D. Ohio Feb. 14, 2017) (Black, J.), *appeal filed,* No. 17-3295 (6th Cir. Mar. 27, 2017); *Brown v. MaClaren,* No. 2:15cv12074, 2016 WL 1242435, at *3 (E.D. Mich. Mar. 30, 2016) (and cases cited therein), *appeal filed,* No. 16-1599 (6th Cir. May 10, 2016).

tolling is granted "sparingly." *Id.* (quoting *Robertson*, 624 F.3d at 784). A habeas petitioner is entitled to equitable tolling only if he establishes that (1) "he has been pursuing his rights diligently"; and (2) "some extraordinary circumstance stood in his way and prevented timely filing." *Id.* (quoting *Holland*, 560 U.S. at 649 (internal quotations omitted)); *see also Pace v. DiGuglielmo,* 544 U.S. 408, 418 (2005). Although the Sixth Circuit previously utilized a five-factor approach in determining whether a habeas petitioner is entitled to equitable tolling, *Holland*'s two-part test has replaced the five-factor inquiry as the "governing framework" to apply. *Hall*, 662 F.3d at 750 (citing *Robinson v. Easterling,* 424 F. App'x 439, 442 n.1 (6th Cir. 2011)). "With *Holland* now on the books, the 'extraordinary circumstances' test, which requires both reasonable diligence and an extraordinary circumstance, has become the law of this circuit." *Id.*; *see also Patterson v. Lafler,* 455 F. App'x 606, 609 n.1 (6th Cir. 2012).

Petitioner has not demonstrated that he is entitled to equitable tolling of the statute of limitations in this case. In his memorandum in opposition to the motion to dismiss, petitioner has presented the following arguments for equitable tolling of the limitations period until May 20, 2015, "the date [his] delayed appeal was denied by the Ohio Supreme Court":

1) counsel induced P[etitioner] into inaction. . . .

2) the discovery of a Constitutional right to appeal. . . .

3) the State's previous correspondence that conditioned P[etitioner] into believing possession of facts were necessary before acquiring relief in their courts and thus prompted reasonable attempts to obtain such before proceeding with litigation. . . .

4) P[etitioner's] belief that the claims relative to case no. 1:16-cv-234 were to be fairly presented to the state courts before raising the present issues to those courts for relief. . .; and

5) P[etitioner's] belief that the one year statute of limitations did not begin to run until the Ohio Supreme Court denied his appeal. . . .

(Doc. 13, at PAGEID#: 773 ¶31).

As discussed above, petitioner has not demonstrated that he has been diligent about pursuing his rights to the extent he contends that his trial counsel misled him into believing he had no right to appeal his conviction and sentence in this case. As noted above, *see supra* pp. 17-18 n.10, even assuming petitioner was misinformed by his counsel about the right to appeal, he has conceded that he learned about that right at some point before August 21, 2013. (*See* Doc. 13, at PAGEID#: 765 ¶6). Despite that knowledge, petitioner did not file his motion for delayed appeal with the Ohio Court of Appeals until well over a year later, on November 17, 2014. (*See* Doc. 8, Exs. 24-25). The undersigned is not persuaded by petitioner's next argument that he was misled by "correspondence" with the State into believing that he could not go forward with any appeal or other "litigation" without first obtaining "facts" contained in the trial record. That argument is suspect because petitioner never raised it to the state courts as a justification for his delays in filing his motion for delayed appeal to the Ohio Court of Appeals or his other belated post-conviction motions that were filed with the trial court. (*See id.*, Exs. 5, 25, 34, 40). In any event, the undersigned has reviewed the state-court record, including the specific references cited by petitioner in support of that argument, and can find nothing even remotely suggesting that petitioner was required to do anything before pursuing his right to an appeal or filing his applications to withdraw his guilty plea and for post-conviction relief. To the extent that petitioner has suggested in that argument and his remaining arguments that his delays in filing should be excused given his lack of access to the state-court record, *pro se* status and lack of legal knowledge

or understanding of the requirements for pursuing relief in the state courts and federal habeas court, it is well-settled in the Sixth Circuit that those arguments are not sufficient to warrant equitable tolling of the limitations period. *See, e.g., Hall,* 662 F.3d at 750-51 (rejecting the petitioner's argument that he was entitled to equitable tolling because of his lack of access to the trial transcript, as well as his *pro se* status and limited law-library access); *Allen v. Yukins*, 366 F.3d 396, 403 (6th Cir. 2004) (quoting *Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir. 1991) ("this court has repeatedly held that 'ignorance of the law alone is not sufficient to warrant equitable tolling'"); *Cobas v. Burgess*, 306 F.3d 441, 444 (6th Cir. 2002) ("an inmate's lack of legal training, his poor education, or even his illiteracy does not give a court reason to toll the statute of limitations"); *Lacking, supra*, 2016 WL 4505765, at *4 ("A prisoner's *pro se* incarcerated status, lack of knowledge regarding the law, and limited access to the prison's law library or to legal materials do not provide a sufficient justification to apply equitable tolling of the statute of limitations.").

In sum, petitioner's arguments are simply insufficient to explain why it took so many years for him to take any action, either by way of a delayed appeal to the Ohio Court of Appeals or by way of a post-conviction or collateral-review application to the trial court, to challenge his conviction and sentence that were entered on the record on June 3, 2008. *Cf. McIntosh v. Hudson*, 632 F. Supp.2d 725, 735 (N.D. Ohio 2009) (in a case where the petitioner claimed he was not advised of his right to appeal, the district court concluded that the petitioner had not demonstrated diligence in pursuing his rights, which was required for equitable tolling of the limitations period with respect to his conviction-based claims, because he "did not act to discover any appellate rights for more than two-and-a-half years after his conviction" and "[a] person in [his] position exercising

due diligence would have acted much sooner, seeking out his rights and remedies"); *see also*
*Lacking v. Jenkins*, No. 2:15cv3069, 2016 WL 4505765, at *5-6 (S.D. Ohio Aug. 29, 2016)
(Report & Recommendation) (and cases cited therein) (involving a delay of more than two years in
filing a motion for delayed appeal after the imposition of sentence), *adopted*, 2016 WL 6125683
(S.D. Ohio Oct. 19, 2016), *appeal filed*, No. 16-4291 (6th Cir. Nov. 10, 2016); *Bandy, supra*, 2010
WL 300704, at *3 (involving a delay of six years in filing a motion for delayed appeal after the
imposition of sentence). Petitioner's unsupported, conclusory contentions about being misled by
his trial counsel and the State do not warrant equitable tolling of a statute of limitations that
expired on July 5, 2009, over six and one-half years before he filed the instant federal habeas
action and over five years before he filed his motion for delayed appeal to the Ohio Court of
Appeals.

Finally, petitioner has not shown that the procedural bar to review should be excused based
on a colorable showing of actual innocence. "To invoke the miscarriage of justice exception to
AEDPA's statute of limitations, . . . a petitioner 'must show that it is more likely than not that no
reasonable juror would have convicted him in the light of . . . new evidence." *McQuiggin v.
Perkins*, __ U.S. __, 133 S.Ct. 1924, 1935 (2013) (quoting *Schlup v. Delo,* 513 U.S. 298, 327
(1995)). In cases such as this involving a conviction upon entry of a guilty plea, "[t]he application
of *Schlup* . . . creates a host of analytical difficulties, given that there is no jury (or factfinder)
finding, the record is normally abbreviated, the state did not 'present' evidence in a fashion
designed to establish guilt beyond a reasonable doubt, and the petitioner typically has confirmed
his guilt through the solemnity of a plea colloquy." *See Eads v. Bottom*, No. 6:13-CV-29, 2014
WL 2742581, at *5 (E.D. Ky. June 12, 2014) (and cases cited therein as recognizing those

problems).  The Sixth Circuit has indicated that in such cases, the court may consider the "facts to which [the petitioner] admitted" when he entered his guilty plea and "any other evidence of his guilt that the Government has marshaled."  *See Connolly v. Howes*, 304 F. App'x 412, 418 (6th Cir. 2008) (internal citation and quotation marks omitted).  *Cf. Bousley v. United States*, 523 U.S. 614, 623-24 (1998) (on remanding a case to permit the petitioner to make a showing of actual innocence for purposes of excusing a procedural bar to review of his guilty-plea conviction, the Supreme Court stated that "the Government is not limited to the existing record to rebut any showing that petitioner might make" and "should be permitted to present any admissible evidence of petitioner's guilt even if that evidence was not presented during petitioner's plea colloquy").  In addition, the petitioner must show not only that he is innocent of the guilty-plea charges, but that he is also "actually innocent of the other charges the government chose to forego during the plea bargaining process."  *Howard v. United States Dep't of Justice,* 3 F. App'x 269, 270 (6th Cir. 2001) (citing *Bousley,* 523 U.S. at 624).

In this case, petitioner has not presented any new evidence to support an actual innocence claim.  Moreover, there is no evidence in the record that would suggest a credible claim of actual innocence in the face of petitioner's admission of guilt murder and firearm specification in exchange for the reduction in the charge from aggravated murder and the dismissal of the remaining four counts.[12]

---

[12] Indeed, contrary to petitioner's contention in Grounds Two and Three of the petition, there is ample evidence in the record to support the inference that petitioner was guilty of murder as opposed to manslaughter.  Specifically, as the trial court pointed out in denying petitioner's March 3, 2015 petition for post-conviction relief (*see* Doc. 8, Ex. 44), Detective Denver Triggs' "Investigator Notes," which petitioner submitted in support of his petition, reflect that petitioner admitted that "he hid in the woods and waited" before he "kicked in the back door of the residence and ran in with . . . pistols out." (*See id.*, Ex. 42, at PAGEID#: 641).  Petitioner also told Triggs that he then ran to the rear of the trailer, "got into an altercation

Accordingly, in sum, the undersigned concludes that the instant petition for federal habeas corpus relief is barred from review by the applicable one-year statute of limitations set forth in 28 U.S.C. § 2244(d)(1)(A). Petitioner's conviction became "final" under § 2244(d)(1)(A) on July 5, 2008, when the time expired for filing a timely appeal from the trial court's June 3, 2008 final judgment entry of conviction and sentence. Petitioner has not demonstrated that equitable tolling principles apply to extend the limitations period or otherwise avoid the statute-of-limitations bar to review. Therefore, respondent's motion to dismiss (Doc. 9) should be **GRANTED**, and petitioner's habeas petition (Doc. 1) be **DISMISSED** with prejudice.

## IT IS THEREFORE RECOMMENDED THAT:

1. Respondent's motion to dismiss (Doc. 9) be **GRANTED**, and petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DISMISSED** with prejudice on the ground that it is time-barred.

2. A certificate of appealability should not issue with respect to any of the claims for relief alleged in the petition, which this Court has concluded are procedurally barred from review on statute-of-limitations grounds, because under the first prong of the applicable two-part standard enunciated in *Slack v. McDaniel,* 529 U.S. 473, 484-85 (2000), "jurists of reason" would not find it debatable whether the Court is correct in its procedural ruling.[13]

---

with the victim," and "fired one shot in the ceiling before firing the rest of the rounds into the [victim's] body." (*Id.*).

[13] Because the first prong of the *Slack* test has not been met, the Court need not address the second prong of *Slack* as to whether "jurists of reason" would find it debatable whether petitioner has stated a viable constitutional claim in his procedurally-barred grounds for relief. *See Slack,* 529 U.S. at 484. However, it is noted that even if petitioner's claims for relief are not time-barred, petitioner faces the additional procedural hurdle of having procedurally defaulted his claims in the state courts. Moreover, it appears that petitioner has not stated a viable claim for habeas relief in Ground One of the petition because, as a matter of state law decided by the Ohio Court of Appeals

3.  With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and therefore **DENY** petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

s/Stephanie K. Bowman
Stephanie K. Bowman
United States Magistrate Judge

---

in this case, petitioner was not entitled to the appointment of two attorneys given that the charge for aggravated murder did not involve a death-penalty specification. *See State v. Heid*, No. 15CA3710, 2016 WL 1733427, at *4 (Ohio Ct. App. Apr. 26, 2016).

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

RAY SCOTT HEID,                                          Case No. 1:16-cv-398
        Petitioner,

                                                         Black, J.
        vs.                                              Bowman, M.J.

WARDEN, ROSS
CORRECTIONAL INSTITUTION,
        Respondent.

**NOTICE**

        Pursuant to Fed. R. Civ. P. 72(b), WITHIN 14 DAYS after being served with a copy of the

recommended disposition, a party may serve and file specific written objections to the proposed

findings and recommendations.   This period may be extended further by the Court on timely

motion for an extension.  Such objections shall specify the portions of the Report objected to and

shall be accompanied by a memorandum of law in support of the objections.  If the Report and

Recommendation is based in whole or in part upon matters occurring on the record at an oral

hearing, the objecting party shall promptly arrange for the transcription of the record, or such

portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the

assigned District Judge otherwise directs.  A party may respond to another party's objections

WITHIN 14 DAYS after being served with a copy thereof.  Failure to make objections in

accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140

(1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

cbc

28